PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Patrick E. Fitzmaurice
Rahman Connelly

*Attorneys for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>IIG Global Trade Finance Fund Ltd. (in Official Liquidation), *et al.*,<br><br>Debtors. | Case No. 20-10132 (MEW)<br><br>Chapter 15<br><br>Jointly Administered |
| IIG Global Trade Finance Fund Limited (in Official Liquidation) and IIG Structured Trade Finance Fund Ltd. (in Official Liquidation),<br><br>Plaintiffs,<br><br>v.<br><br>San Agustin Energy Corp.<br><br>Defendant. | Adv. Pro. No. __-_____ (MEW)<br><br>Complaint |

Plaintiffs IIG Global Trade Finance Fund Ltd. (In Official Liquidation) ("GTFF"), and IIG Structured Trade Finance Fund Ltd. (in Official Liquidation) ("STFF," and together with GTFF, the "Debtors" or "Plaintiffs") by Christopher Kennedy and Alexander Lawson, the duly appointed joint official liquidators (the "Liquidators") and recognized foreign representatives of

the Debtors, as and for their complaint against defendant San Agustin Energy Corp. ("San Agustin" or "Defendant"), allege as follows:

## I. INTRODUCTION

1. This adversary proceeding concerns Plaintiffs' efforts to obtain repayment of more than $18,000,000 they are owed pursuant to a promissory note dated as of November 19, 2019 (the "Note;" and the loan evidenced by the Note, the "Loan") executed by Defendant. The Note matured on April 30, 2020 (the "Maturity Date") but has not been paid.

2. As of the Maturity Date, Defendant's unpaid obligations under the Note totaled at least $16,006,515.17, consisting of unpaid principal of $15,410,843.17 and accrued and unpaid interest of $443,061.74, plus the costs and expenses incurred by Defendants relating to Defendant's default under the Loan Agreement (all such sums due under the Loan Agreement, the "Indebtedness"). Interest continues to accrue on the unpaid balance of the Loan at the default rate of 16.5%, compounded monthly.

## II. JURISDICTION AND VENUE

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this district pursuant to 28 U.S.C. §1410(a)(1).

4. The Note and Loan Agreement (as defined below) are governed by New York law and Defendant has consented to personal jurisdiction of the state and federal courts located in Manhattan.

5. This is a core proceeding under 28 U.S.C. 157(b)(2) and the Court may enter a final order or judgment in this matter.

6. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiffs consent to the entry of final orders or judgment in this matter by this Court.

**III.    THE PARTIES**

7.     The Debtors are exempted limited liability companies incorporated under the laws of the Cayman Islands that are in official liquidation before the Grand Court of the Cayman Islands. The Liquidators were appointed by the Grand Court of the Cayman Islands (the "Grand Court") to oversee the Debtors' liquidation proceedings and are the recognized foreign representatives in the Debtors' Chapter 15 cases pending in this Court.

8.     Defendant is a corporation organized and existing under the laws of the Republic of Panama with an address of IGRS Building, 8 Aquilino de la Guardia Street, P.O. Box. 0823-02435, Panama City, Panama. In the Loan Agreement Borrower irrevocably appointed Devonshire Services LLC, with a business address at 80 Broad Street, Fifth Floor #25, New York, New York 10004, as its agent for service of process.

9.     Non-party Valle Energy, Inc. ("Valle") is a corporation organized under the laws of the British Virgin Islands with its registered office at P.O. Box 662, Road Town, Tortola, British Virgin Islands.

10.    Non-party Lakeview Green Corp. ("Lakeview;" together with Valle, the "Original Borrowers") is a corporation organized under the laws of the British Virgin Islands with its registered office at P.O. Box 662, Road Town, Tortola, British Virgin Islands.

11.    On or about March 10, 2014, the Original Borrowers and IIG Capital LLC, as agent ("IIG Capital"), entered into an uncommitted loan agreement dated as of March 10, 2014, (the "Uncommitted Loan Agreement"), which provided the Original Borrowers with an uncommitted line of credit of up to $10,00,000 (the "Facility Amount").

12.    The Uncommitted Loan Agreement has been amended from time to time including, without limitation, by the July 25, 2014 First Amendment to Uncommitted Loan

Agreement (the "First Amendment") among Original Borrowers and IIG Capital, the October 20, 2014 Second Amendment to Uncommitted Loan Agreement (the "Second Amendment") among Original Borrowers and IIG Capital, the December 23, 2014 Third Amendment to Uncommitted Loan Agreement (the "Third Amendment") among Original Borrowers and IIG Capital, the October 30, 2015 Fourth Amendment to Uncommitted Loan Agreement (the "Fourth Amendment") among Original Borrowers and IIG Capital, and the November 19, 2019 Fifth Amendment to Uncommitted Loan Agreement (the "Fifth Amendment," together with the Uncommitted Loan Agreement, the First Amendment, Second Amendment, Third Amendment and Fourth Amendment, the "Loan Agreement") among Original Borrowers, Trade Finance Trust, as assignee of the Lender, and Defendant (Defendant together with "Original Borrowers," "Borrower").

13. Among other things, the First Amendment increased the Facility Amount[1] to $16,500,000. In the Fifth Amendment, Defendant acknowledged and agreed that as of the execution of the Fifth Amendment, the outstanding principal amount due under the Loan Agreement was $15,450,000 plus accrued interest.

14. Non-party Trade Finance Trust ("TFT") is a Delaware Statutory Trust having its registered office at Deutsche Bank Trust Company Delaware, 1101 Centre Road, Suite 200, Wilmington, Delaware.

15. Non-party IIG TOF B.V. ("TOF BV") is a Dutch company with its corporate seat in Amsterdam, the Netherlands. As of December 3, 2015, Valle and TOF BV entered into an uncommitted loan agreement (the "2015 Loan Agreement;" together with the Loan Agreement,

---

[1] Capitalized terms not defined in this Complaint shall have the meaning given to them in the Uncommitted Loan Agreement.

4

the "Loan Agreements").

16. As of October 8, 2020, TFT and Plaintiffs entered into an assignment agreement (the "Assignment Agreement") pursuant to which TFT assigned to Plaintiffs all its right, title and interest to the loans made to Borrower under the Loan Agreement. As a result of and pursuant to the Assignment Agreement, Plaintiffs are the 'Lender' under the Loan Agreement and all references in the Loan Agreement to the Lender are deemed to be references to the Plaintiffs.

## IV. THE LOAN AGREEMENTS

17. As stated, on or about March 10, 2014 Original Borrowers and IIG Capital, as agent, entered into the Loan Agreement pursuant to which the Lender agreed to provide Original Borrowers with an uncommitted line of credit of up to $10,000,000.

18. Original Borrowers were involved in the exploration, discovery and production of oil and gas in Colombia and intended to use any funds made available to them under the Loan Agreement for that purpose. In particular, any funds advanced under the Loan Agreement were intended to support Valle's exploration, discovery and production of oil and gas through its subsidiary, Defendant, then known as Las Quinchas Resource Corp.

19. To induce Lender to enter into the Loan Agreement, as of March 10, 2014, Defendant issued a guaranty (the "Defendant Guaranty") of Original Borrowers' obligations under the Loan Agreement.

20. Also, as security for the funds advanced under the Uncommitted Loan Agreement, Defendant granted Lender a lien on certain of its oil and gas assets.

21. As of July 25, 2014, Original Borrowers and IIG Capital, as agent, entered into the First Amendment. Among other things, the First Amendment increased the funds potentially available under the Loan Agreement to $16,500,000. In connection with the First Amendment,

Defendant reaffirmed its obligations to Lender under the Defendant Guaranty and otherwise under the Loan Agreement and related agreements among the parties.

22. As of October 20, 2014, Original Borrowers and IIG Capital, as agent, entered into the Second Amendment. In connection with the Second Amendment, Defendant again reaffirmed its obligations to Lender under the Defendant Guaranty and otherwise under the Loan Agreement and related agreements among the parties.

23. As of December 23, 2014, Original Borrowers and IIG Capital, as agent, entered into the Third Amendment. In connection with the Third Amendment, Defendant again reaffirmed its obligations to Lender under the Defendant Guaranty and otherwise under the Loan Agreement and related agreements among the parties.

24. As of October 30, 2015, Original Borrowers and IIG Capital, as agent, entered into the Fourth Amendment. In connection with the Fourth Amendment, Defendant again reaffirmed its obligations to Lender under the Defendant Guaranty and otherwise under the Loan Agreement and related agreements among the parties.

25. By public deed 9.123 dated November 16, 2018, Defendant formally changed its name from Las Quinchas Resource Corp. to San Agustin Energy Corp.

26. As of November 19, 2019, Original Borrowers and Defendant executed the Fifth Amendment. Among other things, pursuant to the Fifth Amendment: (i) Original Borrowers and Valle assigned all of it rights and obligations under the Loan Agreements to Defendant and Defendant agreed to assume all of Original Borrower's and Valle's rights and obligations under the Loan Agreements; (ii) the Facility Amount was amended to $15,450,000; (iii) the Interest Rate was set at 11.50% per annum; and (iv) the Maturity Date for the Loan Agreement was extended to April 30, 2020.

27. As a result of the Fifth Amendment, Defendant was and is the Borrower under the Loan Agreements. In the Fifth Amendment, Defendant acknowledged and agreed that as of the execution of the Fifth Amendment, the outstanding principal amount due under the Loan Agreement was $15,450,000 plus accrued interest. As evidence of its indebtedness under the Loan Agreements, Defendant executed the Note in favor of TFT.

28. After execution of the Fifth Amendment, Defendant made two payments on the Note: a $170,000 payment on December 2, 2019 and a $170,000 payment on January 3, 2020. Of these amounts, $300,843.17 was applied to accrued interest and $39,156.83 was applied toward the principal amount of the Loan.

29. Defendant has not made any additional payments under the Note.

30. The Note matured on April 30, 2020 with unpaid obligations totaling at least $16,006,515.17, consisting of unpaid principal of $15,410,843.17 and accrued and unpaid interest of $443,061.74 plus costs and expenses incurred by Plaintiffs relating to Defendants' breach of the Loan Agreement.

31. From and after the Maturity Date, interest on the Loan has been accruing at the default interest rate of 16.50% per annum, compounded monthly.

## V. THE BANKRUPTCY PROCEEDINGS

32. On October 23, 2019, the Grand Court entered a winding up order providing for the liquidation of GTFF and on January 17, 2020, the Liquidators caused GTFF to file a petition in this Court for recognition of GTFF's Cayman Islands proceeding under Chapter 15 of the Bankruptcy Code. On February 19, 2020, this Court entered an order recognizing GTFF's Cayman Islands proceeding as a foreign-main proceeding.

33. On January 31, 2020, the Grand Court entered a winding up order providing for the liquidation of STFF and on May 8, 2020, the Liquidators caused STFF to file a petition in this Court for recognition of STFF's Cayman Islands proceeding under Chapter 15 of the Bankruptcy Code. On June 19, 2020, this Court entered an order recognizing STFF's Cayman Islands proceeding as a foreign-main proceeding.

34. On July 31, 2020, Plaintiffs filed a Motion for Entry of an Order (A) Authorizing the Liquidators to Enter Into Assignment Agreement and Terminate the Master Participation Agreements; and (B) Entrusting the Debtors' Funds Held in Bank Leumi Collection Accounts to the Liquidators for Distribution in Foreign Main Proceedings (the "Assignment Motion"). Plaintiffs served Defendant with notice of the Assignment Motion and of the initial, the adjourned and all subsequent hearing dates related to the Motion. Defendant did not file any opposition to the Motion and did not attend the hearing.

35. On October 8, 2020, the Court entered an order authorizing Plaintiffs to enter into an assignment agreement pursuant to which TFT would assign to Plaintiffs all its right, title and interest in, to and under the Loan and the Loan Agreements.

36. On or about October 8, 2020, TFT and Plaintiffs entered into an assignment agreement (the "Assignment Agreement") pursuant to which TFT assigned to Plaintiff all its right, title and interest in, to and under the Loan and the Loan Agreements, subject to any interest any third party may have in any loans made pursuant to the Loan Agreements.

37. As a result of that assignment, Plaintiffs are the 'Lender' under the Loan Agreements and entitled to exercise any and all rights of the Lender under those Agreements.

## COUNT I

### BREACH OF CONTRACT – FAILURE TO REPAY LOAN

38. Plaintiffs repeat and reallege each and every allegation contained in the preceding

8

paragraphs as if fully set forth herein.

39. The Loan Agreements are valid and enforceable contracts between the parties.

40. Pursuant to the Loan Agreements, Lender advanced to Borrower more than $15,000,000 in loans which Borrower promised to repay in accordance with the terms of the Loan Agreements. Lender has performed its obligations under the Loan Agreements.

41. Borrower's indebtedness to Lender is evidenced by the Note, pursuant to which Borrower agreed to repay the borrowed sums in accordance with the terms of the Loan Agreements.

42. Pursuant to the Fifth Amendment, the Maturity Date for the Loan was to be April 30, 2020 and, as a result, all sums due and owing from Borrower to Lender under the Loan Agreements were due and payable as of that date.

43. The Note matured on April 30, 2020, but Borrower has failed and refused to pay to Lender the sums due under the Loan Agreements.

44. Borrower's failure to repay the Loan on the Maturity Date is an Event of Default under the Loan Agreement. As a result of Borrower's breaches of the Loan Agreement, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than the amount of the Indebtedness.

45. As of February 28, 2021, Defendant owes Plaintiff $18,186,098.67, which consists of unpaid principal of $15,410,843.17 and accrued and unpaid interest of $2,818,447.70, which interest continues to accrue at the default interest rate of 16.50% per annum, compounded monthly.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against
Defendant:

    a.    On Count I, damages in an amount to be determined at trial but believed to be not less than the Indebtedness, plus pre- and post-judgment interest;

    b.    Pursuant to Section 10.3(c) of the Loan Agreement, the fees, costs and expenses, including reasonable attorneys' fees, incurred by Plaintiffs relating Defendant's default under the Loan Agreement including, without limitation, Plaintiffs costs, expenses and reasonable attorneys' fees relating to this action; and

    c.    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

DATED: March 12, 2021  
New York, NY

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ John A. Pintarelli  
John A. Pintarelli  
Patrick E. Fitzmaurice  
Rahman Connelly  
31 West 52nd Street  
New York, NY 10019-6131  
Phone: 212.858.1000  
Fax: 212.858.1500  
john.pintarelli@pillsburylaw.com  
patrick.fitzmaurice@pillsburylaw.com  
rahman.connelly@pillsburylaw.com

*Attorneys for Plaintiffs IIG Global Trade Finance Fund Ltd. (In Official Liquidation) and IIG Structured Trade Finance Fund Ltd. (In Official Liquidation)*